UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60928- VALLE

CONSENT CASE

JOANNE MADDALONI,

    Plaintiff,

v.

ANDREW SAUL, Commissioner
of the Social Security Administration,[1]

    Defendant.

_____

# ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Plaintiff Joanne Maddaloni's Motion for Summary Judgment and Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment and Response (ECF Nos. 10, 11, 12) (the "Motions"). Pursuant to the parties' consent, this case is before the undersigned for all proceedings, including trial and entry of final judgment. (ECF Nos. 8, 9); *see also* 28 U.S.C. § 636(c).

Accordingly, after due consideration of the record, the Motions, Defendant's Response (ECF No. 12), and being otherwise fully advised on the matter, Plaintiff's Motion is **GRANTED**, Defendant's Motion is **DENIED**, and the Administrative Law Judge's Decision ("ALJ's Decision") is **REMANDED** for the reasons set forth below.

---

[1] Andrew Saul is now the Commissioner of Social Security. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

## I.     PROCEDURAL HISTORY

This suit involves an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (the "Act"). Plaintiff alleged a disability onset date of November 11, 2012. (R. 10, 217). Plaintiff's claims were denied initially and again upon reconsideration. (R. 10, 119, 125). Thereafter, Plaintiff requested a hearing, which was held before ALJ Sarah Cyrus on February 15, 2017. (R. 67, 131). Plaintiff, appearing with counsel, and a Vocational Expert both testified at the hearing.[2] (R. 67-93).

On June 13, 2017, the ALJ issued a decision denying Plaintiff's appeal and finding that Plaintiff was not disabled within the meaning of the Act. (R. 10-19). Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication. (ECF Nos. 10, 11, 12).

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154;

---

[2] Although the ALJ's Decision identifies counsel as Laura Cella-Donovan, the attorney appearing at the hearing was Jennifer Lane. *Compare* (R. 10) *with* (R. 69). Both attorneys, however, appear in the record. *See, e.g.*, (R. 288).

*Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citation omitted); *Brightmon,* 743 F. App'x at 351 (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)  Is the person presently unemployed?
(2)  Is the person's impairment severe?
(3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

>    (4)   Is the person unable to perform his or her former occupation?
>    (5)   Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id*.

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id*. The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy

by either: (i) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2); or (ii) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy.  *Id*. at 1239-40.

### III.   THE RECORD

#### A.  Plaintiff's Testimony and Relevant Background[3]

Plaintiff, born in November 1954, was 62 years old at the time of the administrative hearing.  (R. 72).  Plaintiff is a high school graduate and has approximately two years of business college education.  *Id.*  From June 1991 to November 2012, Plaintiff worked as a Unit Rep for the dialysis unit of Atlantic Health, a health care company.  (R. 73, 87, 210).  In November 2012, Plaintiff underwent surgery of the rotator cuff on her right shoulder, and did not return to work.  (R. 72-73).  Shortly after leaving her job, Plaintiff entered into a severance agreement and received a lump sum payment from Atlantic Health.  (R. 70, 76, 209, 210).

Plaintiff described her Unit Rep job as very active.  (R. 84).  Specifically, Plaintiff performed computer work, created forms, handled payroll, data entry, evaluations, answered telephones, reviewed medical records, took doctor's orders, and assisted with transplant bloodwork for the dialysis patients.  (R. 73).  Plaintiff's work required that she "run [] back and forth" all day.  *Id.*  Plaintiff also transported medical charts, which weighed approximately 20 pounds, to different parts of the office for culling and filing.  (R. 73-74).

Although Plaintiff has a driver's license, she only drives a 5-10 mile local radius due to the pain in her shoulders and neck, which limit her ability to drive because she cannot extend or raise her arms to hold the steering wheel.  (R. 75, 76, 77).  She is usually driven to doctor appointments

---

[3] The medical record in this case is voluminous.  Very little of this record, however, pertains to the dispositive issue raised by the parties on appeal.  Thus, although the undersigned has reviewed the record, it is unnecessary to repeat Plaintiff's medical history except as relevant to the parties' arguments.

by her husband or sister. (R. 75). Plaintiff also lacks the ability to fully reach with either arm due to bilateral rotator cuff tears.[4] (R. 76). Plaintiff testified that putting clothes on over her head or doing laundry aggravates her pain. *Id*. Similarly, Plaintiff has limited range of motion in her neck, and the neck pain interferes with Plaintiff's sleep. (R. 78, 80). Plaintiff testified that the pain causes her to wake up hourly, and that she takes sleeping pills and uses a heating pad or an ice pack when the pain is severe. (R. 80).

Plaintiff also has problems focusing, concentrating, and balancing. (R. 83). Specifically, shortly before the administrative hearing, Plaintiff lost her balance, fell, and broke her toe. *Id*. Consequently, Plaintiff was considering seeing a neurologist. *Id*. Further, at least once to twice a week, Plaintiff suffers from atrial fibrillation/heart palpitations, which feel like an anxiety attack. (R. 79). The medications to treat the heart condition lower Plaintiff's heart rate. *Id*. With medication, these episodes last approximately four to five hours, during which Plaintiff is limited to lying down and watching TV. *Id*. Plaintiff testified that doctors have considered conducting a heart ablation to stop these episodes. (R. 80). Plaintiff also suffers from severe allergic reaction to pain medications, including nausea and dizziness. (R. 81).

With regard to activities of daily living, Plaintiff testified that she wakes up at approximately 9 a.m., has some tea, and immediately places a heating pad on her spine, neck and shoulders for approximately 20 minutes. (R. 81). During the day, Plaintiff spends "quite a bit" of time on her Lazy-Boy chair, but briefly uses her i-Pad. (R. 77, 82). According to Plaintiff, she cannot use a regular desktop computer because she cannot lift her arm to the ergonomic position. (R. 77, 84). Plaintiff also has difficulty looking at a computer screen because it is difficult to move

---

[4] Plaintiff first underwent surgery on her right rotator cuff in 2012, and subsequent surgery for incomplete healing in 2013. (R. 294, 344, 347, 484). In May 2013, Plaintiff reported having problems with her left shoulder. (R. 305). In 2016, Plaintiff continued to report left shoulder pain and was diagnosed with a left incomplete rotator cuff tear. (R. 847, 855, 860, 865).

her neck.  (R. 77-78).  Plaintiff is able to cook, but her husband or another family member helps with chopping food items or lifting heavy dishes.  (R. 78).  Further, Plaintiff can unload the dishwasher, but cannot scrub pots or pans because of the pressure involved in that task.  (R. 83).  Plaintiff also has difficulty grasping glasses and plates without dropping them.  *Id*.  Plaintiff has two young grandchildren and cannot babysit alone because she is unable to pick up her youngest grandchild due to her shoulder surgery.  (R. 82-83).  Plaintiff added that not being able to work has caused financial challenges for her family, including having to file for bankruptcy and forcing her husband into early retirement.  (R. 74, 83).

When questioned about her ability to sit in an office-style chair, Plaintiff initially testified that she could sit for approximately half-an-hour and would then need to stand up and move around.  (R. 85).  Plaintiff later testified, however, that she could sit, stand and walk for approximately two to two-and-a-half hours in an 8-hour day.  (R. 86).

### B. Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a Health Unit Clerk (DOT 245.362-014), semi-skilled, light work, with an SVP of 3.  (R. 88).  The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work experience with the limitations in Plaintiff's RFC could perform Plaintiff's past relevant work.  *Id.*  Specifically, the ALJ's hypothetical individual: (i) could lift and carry up to 20 pounds occasionally and ten pounds frequently; (ii) could stand, walk, and sit up to six hours in an 8-hour day; (iii) could occasionally crawl, climb ladders, ropes, or scaffolds; (iv) could occasionally reach overhead with the right upper extremity; and (v) must avoid concentrated exposure to hazards such as machinery and heights.  *Id*.  The VE testified that such an individual could perform Plaintiff's past relevant work.  *Id.*  Further, such an individual could perform Plaintiff's past relevant work even if additionally limited to occasional reaching overhead with both extremities.  (R. 88-89).

The ALJ next asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform. (R. 89). The VE testified that such an individual could work as a box office cashier (DOT 211.467-030), a merchandise marker (DOT 209.587.034), and a silver wrapper (DOT 318.687-018), all unskilled light work.[5]

Lastly, the ALJ asked the VE if a hypothetical individual with Plaintiff's RFC could perform less than sedentary work if the individual was further limited as follows: (i) must never lift or carry; (ii) can stand and walk a maximum of two hours in an 8-hour workday; (iii) can sit for one hour; (iv) must alternate activities and take frequent breaks; (v) can never squat, stoop, crawl, climb, or reach above shoulder level; (vi) can occasionally bend; (vii) must avoid unprotected heights and moving machinery, except that the individual would have only moderate restrictions to driving; (viii) must avoid exposure to marked changes in temperature, humidity, and exposure to dust, fumes, and gasses; and (ix) cannot perform repetitive movements such as operate foot controls with the bilateral lower extremities. (R. 89-90). The VE testified that such an individual would be precluded from all work. (R. 90).

In response to questioning from Plaintiff's counsel, the VE testified that an individual who needed to be off task 15-20% of an eight-hour workday on a consistent basis would be precluded from all work. *Id*.

## IV.   THE ALJ'S DECISION

On June 13, 2017, after reviewing the evidence and conducting four steps out of the five-step analysis, the ALJ concluded that Plaintiff was not disabled under the Act. (R. 18-19).

At Step 1, after initially stating that Plaintiff had not engaged in substantial gainful activity ("SGA") since November 11, 2012, the ALJ nonetheless went on to conclude that Plaintiff "earned

---

[5] According to the VE, the jobs of box office cashier and merchandise marker have an SVP of 2. (R. 89). The silver wrapper job has an SVP of 1. *Id.*

$32,333.12 in 2013," which "well exceeded [the requisite $12,480 per year], [so that] claimant's work activity definitely rose to a level of SGA." (R. 12).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: hip/spinal osteoporosis, spinal disorders, status post left shoulder rotator cuff tear, and residuals of right rotator cuff repair in 2012. *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (R. 13).

The ALJ next determined that Plaintiff had the RFC to perform light work with some restrictions. *Id.* Specifically, Plaintiff: (i) could lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand, walk, or sit for six hours in an 8-hour workday; (iii) could occasionally crawl, climb ladders, ropes, and scaffolds; (iv) could occasionally reach overhead with her left upper extremity; and (v) must avoid concentrated exposure to hazards such as machinery and heights. *Id.*

At Step 4, the ALJ found that Plaintiff could perform her past relevant work as a health unit clerk. (R. 18). Although the ALJ questioned the VE about other jobs in the national economy, the ALJ did not proceed to Step 5 in her Decision.

## V. DISCUSSION

Plaintiff raises two main challenges to the ALJ's Decision. First, Plaintiff argues that the ALJ erred in finding that monies Plaintiff received in 2013 constituted SGA. (ECF No. 10-2 at 4-6). Plaintiff argues that the ALJ compounded her error by relying on the SGA finding to "discount Plaintiff's credibility." (ECF No. 10-2 at 6). Second, Plaintiff asserts that the ALJ improperly

gave "little weight" to the medical opinion of her treating orthopedist, Dr. George Kolettis,[6] while affording "substantial weight" to the opinion of State Agency consultant, Dr. Benjamin Cortijo.[7] *See generally* (ECF No. 10-2 at 8-17). Based on the ALJ's purported error in evaluating these medical opinions, Plaintiff argues that the ALJ's resulting RFC is flawed and not supported by substantial evidence.[8] (ECF No. 10-2 at 9-10).

For the reasons discussed below, the undersigned finds that the ALJ's Decision must be reversed and remanded for the ALJ to consider and articulate the effect, if any, of the ALJ's SGA finding at Step 1 on the ALJ's later evaluation of: (i) Plaintiff's credibility; (ii) the weight given to the medical evidence; and (iii) Plaintiff's resulting RFC. Because the undersigned finds that the

---

[6] Dr. Kolettis (from Boca Raton Orthopedic Group) treated Plaintiff from approximately February 2016 to January 2017. *See generally* (Ex. 20F) (R. 844-79). In January 2017, Dr. Kolettis completed a Physical Capacities Evaluation ("PCE") (R. 844-46). In the PCE, Dr. Kolettis opined that Plaintiff could sit, stand, and walk for only one hour in an 8-hour workday and needed to alternate activities and take frequent breaks. (R. 844). Further, according to Dr. Kolettis, Plaintiff could perform simple grasping and fine manipulation, but could not push and pull. *Id*. Additionally, Plaintiff could not use her feet for repetitive movements, or lift and carry any weight during an 8-hour workday. (R. 844-45). Dr. Kolettis further opined that Plaintiff could occasionally bend, but could never squat, stoop, crawl, climb, or reach above shoulder level, and was moderately restricted in driving automotive equipment. (R. 845-46).

[7] In February 2015, upon reconsideration of Plaintiff's claim, Dr. Cortijo, a State Agency consultant, reviewed Plaintiff's file and concluded that Plaintiff was not disabled. *See generally* (Ex. 3A) (R. 102-15). Dr. Cortijo found that Plaintiff could perform light work, limited to occasional reaching overhead due to right shoulder pain and decreased range of motion. (R. 112, 113).

[8] Although the parties' arguments focus on the weight assigned to Drs. Kolettis and Cortijo, the record also includes medical treatment by Drs. John Knightly (from approximately late 2012 to early 2014) (Ex. 1F), Gerard Malanga (from approximately September 2013 to April 2015) (Ex. 5F), Michael Rudman (from approximately October 2013 to January 2014) (Ex. 2F), Erica David (a State Agency consultative examiner who evaluated Plaintiff in January 2015) (Ex. 7F), Jay Chun (who diagnosed Plaintiff with cervical spondylosis in early 2015) (Ex. 10F), MaryPat Clements (a rheumatologist who examined Plaintiff in April 2016) (Ex. 16F), Brian Burrough (from approximately March 2016 to December 2016) (Ex. 19F), Joaquin Mendez (from approximately January 2016 to January 2017) (Ex. 21F), and Steven Gudis (who had known Plaintiff for almost 20 years and opined that she was disabled) (Ex. 8F).

ALJ's error at Step 1 taints the entire ALJ Decision and is dispositive, the Court need not address Plaintiff's other allegations of error.[9]

### A. The ALJ Erred in Finding that Plaintiff had Substantial Gainful Activity in 2013

The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity" is work "that involves doing significant physical or mental activities," even on a part-time basis. *Id.* § 404.1572(a). "Gainful work activity," in turn, is work activity done for pay or profit. *Id.* § 404.1572(b). In evaluating whether work activity constitutes substantial gainful activity, the primary consideration is the claimant's earnings from the work activity. *Id.* § 404.1574(a)(1); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014). An ALJ will consider those earnings to determine whether the claimant has SGA, unless there is a showing that the ALJ should not count all of the earnings. 20 C.F.R. § 404.1574(a)(1).

An ALJ may presumptively find that the claimant was engaged in SGA if the claimant's average monthly earnings are above the limit set by the Social Security Administration's guidelines. *See* 20 C.F.R. § 404.1574(b)(2)-(3); *Green v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 906, 908 (11th Cir. 2014). Ultimately, in making a final determination as to SGA, the ALJ will only consider amounts actually earned, meaning that income not directly related to productivity will be subtracted from the claimant's gross earnings to determine the reasonable value of the

---

[9] Although the undersigned finds reversible error based on the ALJ's conflicting SGA finding at Step 1, the Court also notes that the RFC finding appears to be inconsistent with the medical record. For example, despite finding that Plaintiff's severe impairments included "post *left* shoulder rotator cuff tear, and residual of *right* rotator cuff repair," *see* (R. 13), the RFC only limits Plaintiff to occasional reaching overhead with her "*left* upper extremity," without mention of any limitation of the right shoulder. (R. 13, 18). This omission is internally inconsistent and is also inconsistent with Dr. Cortijo's opinion that Plaintiff was limited to occasional reaching overhead with her *right* arm, an opinion to which the ALJ gave "substantial weight." (R. 17, 112). Upon remand, the ALJ should clarify this inconsistency.

actual services performed. *Green*, 555 F. App'x at 908 (citing 20 C.F.R. §§ 404.1574(a)(2); 416.974(a)(2); SSR 83–33).

Here, at Step 1 of the analysis the ALJ concluded as follows:

**The claimant has not engaged in substantial gainful activity since November 11, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).**

The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. According to the claimant's earning's record, the claimant earned $32,333.12 in 2013 (see Exhibit 5D). In order for the claimant's earnings to constitute substantial gainful activity (SGA), the claimant should have earned at least $12,480 per year. Since the claimant's earnings well exceeded this requisite amount, the undersigned finds the claimant's work activity definitely rose to a level of SGA.

(R. 12).

Plaintiff argues that this conclusion is "convoluted" because it simultaneously states that Plaintiff *was* and *was not* engaged in SGA. (ECF No. 10-2 at 4-6). Here, Plaintiff asserts that she has not engaged in SGA. According to Plaintiff, her earnings for 2013 resulted from a Separation Agreement and General Release with her prior employer, who agreed to pay Plaintiff $23,701.75 as weekly salary for 26 weeks, plus a lump sum for eligible paid-time-off benefits. (ECF No. 10-2 at 4); *see also* (R. 210). In addition, Plaintiff received $4,425.96 in private disability benefits from Hartford Life Insurance. (ECF No. 10-2 at 5); (R. 266). According to Plaintiff, "this evidence clearly shows that the monies Plaintiff received in 2013 were not from performing 'substantial work activity,' but rather were benefits paid to her because she was no longer able to work." (ECF No. 10-2 at 5). Thus, Plaintiff argues the ALJ did not consider the source of the payments and relied solely on the amount earned to make an erroneous SGA determination that requires reversal. *Id*.

In response, although Defendant concedes that "there is evidence in the record that appears to support Plaintiff's assertion that her 2013 income 'was not earned through work activity,'"

Defendant nonetheless argues that the ALJ's SGA determination at Step 1 was "harmless" because the ALJ proceeded through the subsequent steps of the sequential analysis to determine disability. (ECF No. 11 at 8). According to Defendant, remand is unwarranted. *Id.*

The undersigned finds that the ALJ's SGA determination, although initially correctly stated in the heading of that section, was inconsistent and erroneously applied throughout the ALJ's Decision. Thus, for the reasons set forth below, the undersigned concludes that the ALJ failed to apply the proper legal standards. First, the record confirms that Plaintiff's 2013 earnings are not from gainful work activity, but from a severance package from her former employer and private disability benefits. (R. 266). Second, at the 2017 administrative hearing, Plaintiff provided the ALJ with a copy of the Separation Agreement and General Release, listing weekly salary payments for 26 weeks, plus a lump sum for eligible paid-time-off benefits. (R. 210). Third, Plaintiff testified that shortly after leaving her job, she entered into a severance agreement and received a lump sum payment from her former employer and a private insurance disability payment. (R. 70, 76, 209, 266). This record unequivocally supports Plaintiff's argument that her 2013 earnings were not from gainful activity. The ALJ's Decision ignores this evidence.

At best, the ALJ's Decision is internally inconsistent and confusing. As discussed previously, the heading of the ALJ's Decision at Step 1 states that "claimant has not engaged in substantial gainful activity since November 11, 2012, the alleged onset date." (R. 12). The ALJ reiterates this conclusion in the next sentence. *Id.* ("The claimant worked after the alleged onset date but this work activity *did not rise to the level of substantial gainful activity*.") (emphasis added). Significantly, the ALJ then reaches the opposite conclusion within the same paragraph, stating: "[s]ince the claimant's earnings well exceed [the] requisite amount, . . . claimant's work activity *definitely rose to the level of SGA*." *Id*. (emphasis added). Thus, the ALJ's conclusions—

within the same paragraph—are inconsistent. Faced with this conundrum, it is not for the undersigned to choose which alternative the ALJ actually meant. *See, e.g., Bell v. Comm'r of Soc. Sec.*, No. 6:15-CV-706-OrL-22GJK, 2016 WL 4473467, at *5 (M.D. Fla. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 4441647 (M.D. Fla. Aug. 23, 2016) (remanding case where the ALJ's decision was internally inconsistent and contained material misstatements of fact).

**B. The ALJ's Error at Step 1 Permeates the Decision and is Reversible Error**

Next, the undersigned considers whether the ALJ's error at Step 1 is harmless, as Defendant argues. (ECF No. 11 at 8-10). For the reasons discussed below, the Court concludes that the ALJ's error at Step 1 is not harmless and requires reversal. The reason is clear: not only did the ALJ err at Step 1, but the ALJ compounded her error by incorporating the erroneous SGA finding at least three more times into other parts of the Decision, critically tainting her other conclusions.

First, in discounting Plaintiff's testimony regarding the limitations caused by her impairments, the ALJ noted that:

> [E]ven though the claimant testified her last day working was November 11, 2012, the claimant's earning record shows she earned in excess of $32,000 in 2013 (see Exhibit 5D), which brings the credibility of the claimant's allegations and testimony into question. *These earnings indicate the claimant was able to engage in SGA level work activity after the alleged onset date*.

(R. 14) (emphasis added).

Second, in evaluating Plaintiff's October 2013 shoulder arthroscopy (with glenohumeral joint debridement) and bicep tendon release and November 2013 x-rays, the ALJ again noted: "Noteworthy, the claimant earned SGA in 2013." (R. 15). Lastly, in summarizing Plaintiff's RFC and supporting her conclusion that "claimant was essentially able to function physically, even with

her impairments," the ALJ again relied on "the claimant work[ing] at SGA level in 2013 (in excess of $32,000), which was after the claimant's alleged onset date (see Exhibit 5D)." (R. 18).

The ALJ's repeated incorporation of the erroneous SGA finding into other aspects of the Decision taints the ALJ's Decision and makes it impossible for the undersigned to determine whether the ALJ applied the proper legal standards or whether the Decision is supported by substantial evidence. Accordingly, the ALJ's error at Step 1, which permeates the Decision, is reversable error.[10] *See, e.g.*, *Hornung v. Saul*, No. 3:19-CV-166-MCR-HTC, 2020 WL 5260786, at *5 (N.D. Fla. Aug. 6, 2020), *report and recommendation adopted sub nom. Hornung v. Comm'r of Soc. Sec.*, No. 3:19-CV-166-MCR-HTC, 2020 WL 5260385 (N.D. Fla. Sept. 3, 2020) (remanding case to ALJ where ALJ completely ignored evidence that would have reduced plaintiff's SGA level); *Etherton v. Comm'r of Soc. Sec.*, No. 5:17-CV-01155-JHE, 2018 WL 4568625, at *8 (N.D. Ala. Sept. 24, 2018) (reversing ALJ's decision where she relied on a misrepresentation of evidence for her SGA determination); *but cf. Clark v. Comm'r of Soc. Sec.*, No. 2:17-CV-501-FtM-99DNF, 2019 WL 1091244, at *5 (M.D. Fla. Mar. 8, 2019) (finding harmless error regarding SGA because the ALJ continued beyond step 1 of the evaluation process); *Rollins v. Colvin*, No. 4:13-CV-1979-VEH, 2014 WL 3689787, at *6 (N.D. Ala. July 22, 2014) (concluding that any error by the ALJ in incorrect SGA finding was harmless because it did not

---

[10] Moreover, the ALJ is not required to cite every piece of evidence, *see, e.g., Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 969 (11th Cir. 2015), but must provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891-92 (11th Cir. 2013) (citation omitted). Here, although the ALJ summarized the medical records of Plaintiff's other doctors with some specificity, *see* (R. 14-17), the ALJ only summarily addressed the medical records of Dr. Kolettis (to whom the ALJ assigned "little weight") or Dr. Cortijo (to whom the ALJ assigned "substantial weight"). (R. 16, 17). The ALJ's failure to clearly articulate her reasoning makes it impossible for the undersigned to determine whether the ALJ's Decision is supported by substantial evidence. Accordingly, upon remand, the ALJ is encouraged to articulate her reasons more fully for the weight assigned to the opinions of Plaintiff's treating source (Dr. Kolettis) and the State Agency consultant (Dr. Cortijo), and the effect, if any, on Plaintiff's RFC.

materially affect the ALJ's decision). Ultimately, it is not for the undersigned to make independent factual determinations, re-weigh the evidence, or substitute its judgment for that of the ALJ. *Winschel,* 631 F.3d at 1178. Rather, the undersigned's review of the ALJ's Decision is limited to determining whether the ALJ's Decision is based on correct legal standards and is supported by substantial evidence. Here, the ALJ's Decision is confusing and inconsistent at Step 1. The ALJ then compounded her error by incorporating the erroneous SGA finding in her evaluation of: (i) Plaintiff's credibility; (ii) the weight of the medical evidence; and (iii) Plaintiff's RFC.

## VI. CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 10) is **GRANTED**, Defendant's Motion for Summary Judgment (ECF Nos. 11, 12) is **DENIED**, and the ALJ's Decision is **REVERSED AND REMANDED**.

2. The Clerk is directed to enter judgment in favor of Plaintiff, to terminate all pending motions, and to **CLOSE** the case.

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on March 19, 2021.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record